ZEPHYR M. HUDSON, EMPLOYEE-PLAINTIFF v. MASTERCRAFT DIVISION, COLLINS & AIKMAN CORPORATION, EMPLOYER-DEFENDANT, AND AETNA CASUALTY & SURETY COMPANY, CARRIER-DEFENDANT

No. 8710IC199

(Filed 21 July 1987)

1. **Master and Servant § 72— workers' compensation—partial disability of thumb—insufficiency of evidence**

Evidence was insufficient to support the Industrial Commission's finding and conclusion that plaintiff suffered a five percent permanent partial disability of her left thumb as a result of her injury by accident.

**2. Master and Servant § 94— workers' compensation—temporary total disability —sufficiency of evidence**

Evidence was sufficient to support the Industrial Commission's finding that plaintiff was temporarily totally disabled as a result of a work related injury where it tended to show that her doctor recommended that she refrain from using scissors in her work due to the problem with her thumb which resulted from a work related injury, and that she not do any work which required heavy lifting or working above her shoulders due to her non-work related brachial neuritis; the doctor's recommendation was reported to defendant employer; and plaintiff was placed on medical leave of absence due to the restrictions placed upon her.

**3. Master and Servant § 94.1— workers' compensation—duration of temporary total disability—insufficiency of findings**

The Industrial Commission's findings with respect to the duration of plaintiff's temporary total disability were not supported by the evidence where the Commission found that her temporary total disability began on 5 February 1985 but all the evidence disclosed that plaintiff continued to work until 8 February 1985; and, because the Commission failed to make any finding of fact as to the date plaintiff reached maximum medical improvement, it was impossible for the Commission properly to determine the duration of plaintiff's healing period, upon which an award of benefits for temporary disability must be based.

**4. Master and Servant § 75— workers' compensation—cost of treatment by second physician—necessity for treatment—notice to Commission—insufficiency of findings**

The Industrial Commission erred in ordering defendant to pay the cost of plaintiff's treatment by a second physician without first finding that the physician's treatment was "required to effect a cure or give relief" from her injury or that plaintiff had sought approval by the Commission of her procurement of the physician's services "within a reasonable time."

APPEALS by plaintiff and defendants from Opinion and Award of the North Carolina Industrial Commission entered 27 August 1986. Heard in the Court of Appeals 11 June 1987.

Plaintiff filed this claim for workers' compensation benefits for an alleged accidental injury to her hand arising out of and in the course of her employment with Mastercraft Division, Collins and Aikman Corporation. The claim was initially heard by Deputy Commissioner Shuping who awarded plaintiff compensation for a five percent permanent partial disability of her left thumb pursuant to G.S. 97-31(1), but declined to award compensation for temporary total disability. Deputy Commissioner Shuping also ordered defendants to pay the expenses of plaintiff's medical

treatment incurred through 5 February 1985, but not thereafter. Plaintiff appealed to the Full Commission.

On appeal, the Full Commission found that plaintiff was temporarily totally disabled from 5 February 1985 until 10 October 1985 as a result of her accidental injury, and that she sustained a five percent permanent partial disability of her left thumb. The Commission awarded compensation accordingly and ordered defendants to pay all medical expenses incurred by plaintiff as a result of her injury by accident. Plaintiff and defendants appealed.

*Cox and Gage, by Robert H. Gage, for plaintiff appellant.*

*Hedrick, Eatman, Garner & Kincheloe, by Edward L. Eatman, Jr., for defendants appellants.*

MARTIN, Judge.

In the present case, there is no dispute that plaintiff sustained a compensable injury. The parties contend on appeal, however, that the Commission erred in determining the extent to which plaintiff is entitled to compensation for temporary and permanent disability as a result of her injury. Their contentions have merit and require that we remand the case for additional findings with respect to both questions.

Appellate review of a decision of the Industrial Commission is limited to a determination of whether or not there is competent evidence to support the Commission's findings, and whether or not those findings justify the Commission's legal conclusions and decision. *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981). The Commission is the sole judge of the weight and credibility of the evidence, but its findings must be supported by some competent evidence in the record. *Click v. Pilot Freight Carriers, Inc.,* 300 N.C. 164, 265 S.E. 2d 389 (1980).

Evidence before the Commission in the present case tended to show that in 1984, and for approximately four and one-half years prior thereto, plaintiff was employed as a cone winder operator for defendant-employer. In January or February of 1984, she sustained an injury when a spindle fell from the machine she was operating and struck her left thumb. She was treated for her

injury by Dr. Hobart Rogers and recovered. She did not file a claim for compensation for her injury.

On or about 28 December 1984, plaintiff sustained a similar injury when another spindle fell and struck her left thumb. She continued to work until 12 January 1985, when she sought treatment from Dr. Rogers due to severe pain in her hand. She returned to work on 14 January and worked on light duty status until 8 February 1985 when she was placed on medical leave of absence by defendant-employer.

Dr. Rogers testified that plaintiff complained of pain in her left hand, her left arm, and her neck. In his opinion she suffered from capsulitis around the left thumb, caused by her job-related injury, and from brachial neuritis which was not related to her employment. He last saw plaintiff on 5 February 1985, at which time he recommended that she not continue to perform the cone winding job because it required the use of scissors which "aggravated the problem with her thumb." He also recommended, due to plaintiff's brachial neuritis, that she not do any work that required heavy lifting or working above shoulder level. Because of the limitation of the use of her thumb, Dr. Rogers testified that in his opinion plaintiff had sustained a five percent permanent partial disability of her left thumb as a result of the injury by accident.

On 25 February 1985, plaintiff sought treatment from Dr. Brown Crosby. According to Dr. Crosby's testimony, plaintiff suffered from a sprain of her left thumb and from carpal tunnel syndrome, or compression of the median nerve, of her left hand. In Dr. Crosby's opinion, plaintiff reached maximum medical improvement on 18 October 1985. He continued to treat her until 10 January 1986 when he released her to return to work. Dr. Crosby rated her permanent partial disability as ten percent of her left hand. He testified on direct examination that plaintiff's injury could have been caused by her 28 December 1984 accident. On cross-examination, however, Dr. Crosby testified that he could not state to a medical certainty that plaintiff had carpal tunnel syndrome or that her condition was work-related.

I

PLAINTIFF'S APPEAL

[1]    The Commission found as a fact that at the time of plaintiff's 5 February 1985 visit to Dr. Rogers, he gave her a five percent permanent partial disability rating of her left thumb. The Commission went on to find and conclude that plaintiff suffered a five percent permanent partial disability of her left thumb as a result of her injury by accident. Plaintiff assigns error to these findings, contending that they are not supported by competent evidence. We agree.

G.S. 97-31 provides for compensation for temporary disability during the healing period and for an award for permanent disability at the end of the healing period when maximum recovery has been achieved. *Moretz v. Richards & Associates, Inc.*, 74 N.C. App. 72, 327 S.E. 2d 290 (1985), *modified and aff'd*, 316 N.C. 539, 342 S.E. 2d 844 (1986). The healing period of an injury is defined as "the time when the claimant is unable to work because of his injury, is submitting to treatment . . . or is convalescing." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 288-89, 229 S.E. 2d 325, 328 (1976), *disc. rev. denied*, 292 N.C. 467, 234 S.E. 2d 2 (1977). The healing period ends when, "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." *Id.* at 289, 229 S.E. 2d at 329.

Dr. Roger's testimony does not support the Commission's findings. Dr. Rogers did not testify that he rated plaintiff's permanent partial disability at the time of her 5 February 1985 visit, or that she had reached maximum medical improvement on that date. Indeed, his clinical note of her visit indicates that plaintiff continued to have pain in her thumb, that she should not continue the work that she was doing, and that she should return to see him in six weeks. Moreover, Dr. Rogers did not render an opinion as to the date upon which plaintiff reached maximum medical improvement nor did he indicate that he had any knowledge of her condition upon reaching that point. At the time Dr. Rogers rendered his opinion as to permanent disability, i.e., 18 June 1985, plaintiff continued to be, according to other findings by the Commission, temporarily totally disabled to work and, therefore, was still in the healing period and had not reached maximum medical improvement. Thus, Dr. Rogers' rating of plaintiff's permanent

disability was premature. Since there was no other competent evidence to support the Commission's finding that plaintiff's permanent partial disability was limited to five percent of her thumb, we must vacate the award and remand the case for a proper determination of the extent of her permanent disability.

## II

### DEFENDANTS' APPEAL

[2]  Defendants contend that there is no evidence to support the Commission's finding that plaintiff was temporarily totally disabled as a result of a work-related injury. We disagree.

There was evidence tending to show that after examining plaintiff on 5 February 1985, Dr. Rogers recommended that she refrain from using scissors in her work, due to the problem with her thumb, and that she not do any work that required heavy lifting or working above her shoulders, due to her non-work-related brachial neuritis. Dr. Rogers' recommendation was reported to defendant-employer, and plaintiff was placed on medical leave of absence due to the restrictions placed upon her. Although defendant-employer offered evidence tending to show that plaintiff was placed on leave due to the restrictions associated with her brachial neuritis, plaintiff testified that she was told the restrictions on her use of scissors resulted in her medical layoff. Though he equivocated on cross-examination, Dr. Crosby testified that plaintiff's carpal tunnel syndrome could have been caused by the 28 December 1984 accident. In the opinion of Dr. Crosby, plaintiff reached maximum medical improvement on 18 October 1985. In our view, this evidence was sufficient to support the Commission's finding that plaintiff was temporarily totally disabled as a result of her accidental injury.

[3]  The Commission's findings with respect to the duration of plaintiff's temporary total disability are not, however, supported by the evidence. The Commission found that her temporary total disability began on 5 February 1985, when all of the evidence discloses that plaintiff continued to work until 8 February 1985. The Commission did not find the date upon which plaintiff reached her maximum medical improvement, but determined that her temporary disability ceased on 10 October 1985, a date for which there is no evidentiary support whatsoever. Because the Commission failed to make any finding of fact as to the date plaintiff reached

maximum medical improvement, it was impossible for the Commission to properly determine the duration of plaintiff's healing period, upon which an award of benefits for temporary disability must be based. *Moretz v. Richard & Associates, Inc., supra.* Accordingly, we must vacate the award of compensation for temporary total disability and require the Commission, upon remand, to find additional facts with respect to the duration of plaintiff's temporary total disability.

Defendants also assign error to the Commission's award of the expense of plaintiff's medical treatment by Dr. Crosby. They cite two grounds for their contention: first, they contend that Dr. Crosby did not treat plaintiff for a work-related injury, and second, that the Commission did not approve such treatment. Because we have determined that the evidence is sufficient to support a finding that the condition for which Dr. Crosby treated plaintiff resulted from an injury by accident arising out of and in the course of her employment, we overrule defendants' first contention without further discussion. The second contention, however, has merit.

[4]  G.S. 97-25 authorizes the Industrial Commission to award to an injured employee, in addition to recoverable compensation, expenses for medical treatment "as may reasonably be required to effect a cure or give relief" from the work-related injury. Ordinarily, the employer will provide any necessary medical treatment; however, the "injured employee has the right to procure, even in the absence of an emergency, a physician of his own choosing, subject to the approval of the Commission." *Schofield v. The Great Atlantic & Pacific Tea Co.*, 299 N.C. 582, 591, 264 S.E. 2d 56, 62 (1980). Prior approval of the employee's procurement of his own physician is not required; the employee simply must obtain approval from the Commission "within a reasonable time after he has selected a physician of his own choosing to assume treatment," *id.* at 593, 264 S.E. 2d at 63, and the Commission must make appropriate findings "relative to whether such approval was sought . . . within a reasonable time." *Id.* at 594, 264 S.E. 2d at 64. In addition:

> upon submission of a claim for approval for medical treatment rendered by the employee's own physician, there must be findings based upon competent evidence that the treat-

ment was "required to effect a cure or give relief," . . . . There should also be findings that the condition treated is, or was, caused by, or was otherwise traceable to or related to the injury giving rise to the compensable claim. [Citation omitted.]

*Id.* at 595, 264 S.E. 2d at 64-65.

In the present case, defendant-employer arranged and provided for medical treatment of plaintiff's injuries by Dr. Rogers. After a short course of treatment, however, plaintiff became dissatisfied with Dr. Rogers' diagnosis and treatment of her condition and procured the services of Dr. Crosby. The Commission concluded that plaintiff is "entitled to payment of all medical bills incurred as a result of her injury by accident, including the cost of medical treatment by Dr. Crosby," but made no findings that Dr. Crosby's treatment was "required to effect a cure or give relief" from her injury, or that plaintiff had sought approval by the Commission of her procurement of Dr. Crosby "within a reasonable time." Findings with respect to these requirements of the law should have been made in the present case and it was error for the Commission to order defendant to pay the cost of plaintiff's treatment by Dr. Crosby without doing so.

The Opinion and Award of the Industrial Commission is vacated and this case is remanded to the Commission for further findings of fact made in accordance with this opinion.

Vacated and remanded.

Judges BECTON and COZORT concur.