KATHERINE W. BRASWELL, EMPLOYEE, PLAINTIFF v. PITT COUNTY MEMO-
RIAL HOSPITAL, EMPLOYER; **SELF-INSURED**, (ALEXSIS RISK MANAGEMENT
SERVICE), DEFENDANT

No. 9110IC426

(Filed 7 April 1992)

1. **Master and Servant § 75 (NCI3d)— workers' compensation—
choice of physician—approval of Commission—findings required**

An Industrial Commission opinion denying workers' com-
pensation for back surgery was remanded where the Commis-
sion found that the surgery was not authorized, but did not
make findings as to whether approval for any of that doctor's
treatment was sought within a reasonable time. Under N.C.G.S.
§ 97-25, plaintiff may choose her own physician, provided she
obtains the approval of the Commission within a reasonable
time after such procurement and the treatment is to effect
a cure or provide rehabilitation. The first question is whether
such approval was sought within a reasonable time, and the
Commission must make findings upon this issue. If the Com-
mission finds any of the doctor's services to have been author-
ized, then the Commission may proceed under the second prong
of the statute to determine whether those services, viewed

1

BRASWELL v. PITT COUNTY MEM. HOSP.

[106 N.C. App. 1 (1992)]

as a whole, effected a cure, afforded plaintiff relief, or otherwise lessened her disability.

**Am Jur 2d, Workmen's Compensation §§ 391, 394.**

**2. Master and Servant § 96.6 (NCI3d) — workers' compensation — maximum medical improvement — finding not based upon sufficient evidence**

An Industrial Commission opinion denying workers' compensation for back surgery was remanded for a de novo hearing on when plaintiff reached maximum medical improvement where the Commission's finding as to that issue was not based upon sufficient competent evidence.

**Am Jur 2d, Workmen's Compensation § 550.**

Chief Judge HEDRICK concurring.

APPEAL by plaintiff from opinion and award filed 23 January 1991 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 March 1992.

Plaintiff was employed by defendant Pitt County Memorial Hospital as a registered nurse, for whom she had worked intermittently since 1978 or 1979 when she was a licensed practical nurse. On 19 January 1987 plaintiff and a nurse's aide were assisting a patient back to bed when the patient suddenly went limp causing them to have to support his entire weight in order to prevent him from falling. At that time plaintiff felt a stinging, tingling sensation in her back which radiated into her left buttock. Although she experienced pain during the night she returned to work the next day. After working approximately one hour, however, plaintiff was in severe pain and went to defendant's Employee Health Service for treatment, which sent her home.

On 21 January 1987 plaintiff was seen by Dr. Ramsdell who was a partner of Dr. White, the regular Employee Health Service physician. She was experiencing severe lower back pain and was treated with medication, bed rest, and physical therapy, and was later seen by Dr. White. When treatment was unable to afford her relief and she continued to complain of persistent pain, she was referred to Dr. Jones, a neurosurgeon for whom she indicated a preference.

BRASWELL v. PITT COUNTY MEM. HOSP.

[106 N.C. App. 1 (1992)]

Plaintiff was first seen by Dr. Jones on 18 February 1987. He performed various tests and diagnosed her condition as a lumbar strain, recommending further conservative treatment but not surgery. She continued to complain of pain but Dr. Jones released her from his care in April 1987, having nothing further to offer her from a neurological standpoint. Her case was referred back to Dr. White with the indication that another referral might be appropriate.

Plaintiff asked to see another doctor and defendant subsequently sent her to Dr. Bowman, an orthopaedic surgeon, who evaluated her on 4 June 1987. Dr. Bowman diagnosed her condition as a healing or healed sprain superimposed on obesity. He was of the opinion that physically she should be able to return to work at that time but a one-month tapering process back towards work would be helpful to her psychologically and that she should complete her course of rehabilitation. (Plaintiff had a very emotional reaction to her injury which was compounded by the fact that her daughter ran away from home in May 1987). Dissatisfied with Dr. Bowman's evaluation, plaintiff consulted her family physician, Dr. Galloway, on 5 June 1987, who treated her with medication for anxiety and depression.

On 22 June 1987 plaintiff consulted with Dr. Miller, an orthopaedic surgeon, despite the Deputy Commissioner's finding that defendant specifically denied plaintiff's request to see him. Based upon her positive response to a facet joint injection he diagnosed her condition as facet syndrome and recommended surgery to fuse the joint. A motion to allow this change of physicians was filed with the Industrial Commission on 22 July 1987 and forwarded to defendant's insurance carrier. The Commission requested by letter dated 30 July 1987 that the carrier respond to this motion. Neither the carrier nor the Commission responded to plaintiff's motion.

On 19 August 1987 Dr. Miller performed surgery. Plaintiff initially obtained relief from the operation but shortly thereafter her condition began to degenerate. Unable to alleviate her pain, Dr. Miller referred her to Dr. Powers, a neurosurgeon on the faculty at the University of North Carolina at Chapel Hill. Dr. Powers was unable to determine what abnormality had been the basis for the surgery but felt that a single facet injection was not an

adequate basis on which to perform a lumbar fusion absent other signs or symptoms of an injury.

Pursuant to defendant's acceptance of liability the parties entered into an Industrial Commission Form 21 Agreement, which was approved by the Commission on 24 February 1987. Under the terms of this agreement plaintiff was paid weekly temporary disability benefits from 20 January 1987 through 4 July 1987, the date on which Dr. Bowman released her to return to work. Plaintiff subsequently requested a hearing due to the failure of the Commission and its carrier to respond to plaintiff's motion for change of physician and additional rehabilitative treatment. From the opinion and award of the Commission filed 23 January 1991, plaintiff now appeals.

*Harrington and Edwards, by Roberta L. Edwards, for plaintiff appellant.*

*Teague, Campbell, Dennis & Gorham, by Linda Stephens and Kathryn G. Tate, for defendant appellee.*

WALKER, Judge.

[1] The pertinent portion of G.S. 97-25 provides:

> Medical compensation shall be provided by the employer. In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary.

> The Commission may at any time upon the request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Commission, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

>   . . . .

> [I]f he so desires, an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission.

Under this statute plaintiff may choose her own physician provided she obtains the approval of the Commission within a reasonable time after such procurement, and the treatment sought is to effect a cure or provide rehabilitation. *Lucas v. Thomas Built Buses*, 88 N.C.App. 587, 364 S.E.2d 147 (1988). Approval is not necessary prior to her seeking assistance from another physician. *Schofield v. The Great Atlantic and Pacific Tea Co.*, 299 N.C. 582, 264 S.E.2d 56 (1980). The first question which must be answered under the statute, then, is whether such approval was sought within a reasonable time. *Forrest v. Pitt County Board of Education*, 100 N.C.App. 119, 394 S.E.2d 659 (1990), *aff'd*, 328 N.C. 327, 401 S.E.2d 366 (1991). The Commission *must make* findings bearing upon this issue for, "[i]f a plaintiff seeks approval of the physician within a reasonable time, if the Commission approves a plaintiff's choice and if the treatment sought is to effectuate a cure or rehabilitation, then the employer has a statutory duty under [G.S.] 97-25 to pay for the treatment." *Id.* at 126, 394 S.E.2d at 663; *See also, Hudson v. Mastercraft Div., Collins & Aikman Corp.*, 86 N.C.App. 411, 358 S.E.2d 134, *disc. review denied*, 320 N.C. 792, 361 S.E.2d 77 (1987).

In the case *sub judice* the Industrial Commission found:

8. Although as of 4 July 1987 plaintiff possessed the capacity to return to her normal work which she was performing prior to the time of her on-the-job injury, she made no effort to return to work. In fact, she chose to seek unauthorized medical treatment by a doctor of her own choosing. Unfortunately, his ultimate choice of treatment was inappropriate. Surgery should not have been performed. It did not effect a cure, give relief, of [sic] lessen her disability. Furthermore, the surgery was not authorized by the defendant or the Industrial Commission, and there was no emergency involved.

Any disability which plaintiff suffered after she was released from treatment to return to her normal work as of 4 July 1987 was not the result of her on-the-job injury, but, at least in part, was the result of unauthorized treatment, particularly the surgery by Dr. Miller. Such treatment did not lessen her period of disability but instead lengthened the period of disability. In fact, her condition worsened after the surgery and, thus, did not either effect a cure or give relief or lessen her period of disability.

The Commission failed to make any preliminary requisite findings of whether plaintiff sought approval by the Commission for treatment by Dr. Miller within a reasonable time after procuring his assistance. Instead, the Commission's holding that plaintiff was not entitled to have the defendant pay for any expenses incurred under Dr. Miller was based upon the second prong of the statute, that the treatment did not effect a cure, give relief or lessen the period of plaintiff's disability. With this analysis we cannot agree.

In *Forrest v. Pitt County Board of Education, supra*, plaintiff was employed as a cafeteria manager when she fell and injured her back in the cafeteria freezer at one of defendant's public schools. She sought medical assistance from Dr. Boone who subsequently performed surgery and treated her with medications and physical therapy. Plaintiff continued to experience pain in her back and leg, however. The Deputy Commissioner concluded as a matter of law that plaintiff was not entitled to have the expenses incurred while under Dr. Boone's care paid pursuant to the provisions of the Workers' Compensation Act because she had chosen to see Dr. Boone on her own. The Full Commission affirmed noting that there was no evidence the surgery performed was in the nature of an emergency or otherwise authorized. This Court stressed that although the Full Commission stated there was no evidence "that the *surgery* was authorized, . . . [t]here [were] no findings of fact . . . indicating whether approval for *any* of Dr. Boone's treatment of plaintiff was sought within a reasonable time. *Id*. at 126, 394 S.E.2d at 663. (Emphasis in original). It was noted:

> If Dr. Boone was an acceptable choice for a treating physician and the request before the Commission was made in a reasonable time, the next issue to be determined would be whether the services performed effected a cure or rehabilitation. If so, the fees should be paid. We find no findings of fact or conclusions of law addressing these issues as required by the statute.

*Id*. at 127, 394 S.E.2d at 664. Consequently, this Court vacated the portion of the Full Commission's opinion and award dealing with this issue and remanded with directions that "the Commission . . . mold its findings of fact and conclusions of law to conform to the statute." *Id*. at 128, 394 S.E.2d at 664.

Although the limited findings by the Commission in *Forrest* suggested it misconstrued the law to require approval prior to the surgical procedure, that case emphasizes the Commission's duty

to make findings of fact in accordance with the statute. Insofar as the Commission in this case failed to address whether plaintiff requested a change of physician within a reasonable time, we remand this matter to the Commission for further findings on this issue. Upon a finding that the request was made within a reasonable time, the Commission must make a determination of whether approval by the Commission was granted or denied, in light of the Commission's apparent inaction on plaintiff's motion. Although the Commission stated in its Finding of Fact No. 8 that the surgery was not authorized, it must make findings of fact with regard to whether approval for *any* of Dr. Miller's treatment was sought within a reasonable time. The Commission's conclusion that "[p]laintiff is not entitled to have the defendant pay for any of the treatment rendered by Dr. Miller because such treatment was not authorized by the defendant, not approved by the Industrial Commission, was not sought under emergency circumstances, and was not necessary to effect a cure, give relief, or lessen the period of plaintiff's disability" is not amply supported by the findings of fact which stress the unauthorized nature of the *surgery*. If the Commission finds any of Dr. Miller's services to have been authorized then the Commission may proceed under the second prong of the statute to determine whether those services, when viewed as a whole, effected a cure, afforded plaintiff relief or otherwise lessened her disability.

[2] Plaintiff further assigns as error the Commission's determination that she had reached maximum medical improvement on 5 July 1987 and was therefore not entitled to temporary total disability compensation after that date. The Deputy Commissioner found:

> .8. As a result of this injury by accident, plaintiff was unable to work from July 5, 1987 through August 16, 1988 when this case was heard. She had not reached maximum medical improvement as of that date. No finding is made regarding the extent of any subsequent temporary total disability or permanent partial disability she might have sustained.

The Full Commission struck this finding and determined:

> 7. On 4 July 1987 plaintiff regained the capacity to earn the same wages which she was earning at the time of the injury in the same or a similar employment. She continued to retain that capacity through the date of the hearing. As

of 4 July 1987 plaintiff sustained a five percent (5%) permanent partial impairment as a result of the on-the-job injury.

The Commission apparently based its decision upon Dr. Bowman's opinion of 4 June 1987 that plaintiff was capable of returning to work, but that due to her psychological condition a tapering period over the next month would be beneficial. However, we cannot conclude that this finding was based upon sufficient competent evidence. Upon remand, we therefore direct the Commission to conduct a *de novo* hearing on the issue of when plaintiff reached maximum medical improvement.

Reversed and remanded.

Judge ORR concurs.

Chief Judge HEDRICK concurs with a separate opinion.

Chief Judge HEDRICK concurring.

I concur in the opinion of the majority reversing and remanding this proceeding to the Industrial Commission for a "hearing on the issue of when plaintiff reached maximum medical improvement" and for a hearing with respect to "whether plaintiff sought approval by the Commission for treatment by Dr. Miller within a reasonable time after procuring his assistance." In my opinion, the proceeding before the Industrial Commission, in addition to being "*de novo*" as directed by the majority opinion, should be conducted pursuant to the provisions of G.S. 97-85.

In *Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 374 S.E.2d 610 (1988), we undertook, in considerable detail, to explain the duties of the full Commission in reviewing a case pursuant to G.S. 97-85. In *Joyner*, we also explained that the North Carolina Industrial Commission does not judicially review cases pursuant to G.S. 97-85 in the same way that an appellate court reviews cases from the trial courts, and we suggested that the better practice to be followed by the full Commission is to make its own findings of fact, conclusions of law and enter an appropriate order rather than adopt the findings and conclusions of the hearing officer. *Id.* at 482-483, 374 S.E.2d at 613. The full Commission has consistently ignored what we perceived to be helpful suggestions in *Joyner*, and the present case is no different.

BRASWELL v. PITT COUNTY MEM. HOSP.

[106 N.C. App. 1 (1992)]

Here, Deputy Commissioner Dianne C. Sellers, writing for the full Commission, stated, *inter alia*, that:

The Full Commission adopts as its own the Opinion and Award, as modified, of the Deputy Commissioner. The result reached by her [Deputy Commissioner Morgan S. Chapman] is hereby, in all respects, MODIFIED and AFFIRMED.

In reality, the decision of the full Commission *reversed* the decision of the Deputy Commissioner requiring defendant to:

1. . . . pay additional temporary total disability compensation to plaintiff at the rate of $40.38 per week for 23 5/7 weeks for the period from January 20 through July 4, 1987 . . . .

2. . . . pay compensation to plaintiff for temporary total disability at the rate $146.35 per week for 58 6/7 weeks, for the period from July 5, 1987 through August 16, 1988, and continuing thereafter until she is released to return to work by her physician, she returns to work, or she reaches maximum medical improvement . . . .

3. . . . pay all medical expenses incurred by plaintiff as a result of this injury by accident, excluding those arising from the surgery performed by Dr. Miller, when bills for the same have been submitted through the defendant to the Industrial Commission and approved by the Commission.

Moreover, in its decision, the full Commission found and concluded that:

2. As a result of the compensable injury plaintiff sustained a five percent (5%) permanent partial disability of her back. N.C.G.S. 97-31(15).

Yet, the full Commission made no award for plantiff's permanent partial disability and gave no explanation as to why no award was made. This omission, as well as the errors cited by the majority, on the part of the full Commission requires that the decision of the full Commission be reversed and the case remanded to the full Commission to "review the award, . . . reconsider the evidence, receive further evidence, rehear the parties or their representatives and, if proper, amend the award" pursuant to G.S. 97-85 without remanding the case to the Deputy Commissioner.