The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with some modification. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
There is a Form 21 Agreement in the file which was approved by the Industrial Commission and is a part of the record. Pursuant to that Agreement defendant admitted liability for injuries to plaintiff's knees and back. Plaintiff was paid temporary total disability benefits pursuant to the Form 21 Agreement until a Form 24 was approved on 19 September 1994.
The only medical records which both parties agree could be made part of the record and which were submitted to the Deputy Commissioner prior to the close of the record, were those from Physician's Immediate Care Center and Dr. Kaplan. Other medical records were made part of the record during the depositions, and those medical records attached to the depositions were received in evidence.
* * * * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with some modification to Finding of Fact Number 9, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Plaintiff is 45 years old and has a ninth grade education. During her lifetime she has worked as a cashier, receptionist, busperson, salesperson, custodian, and seamstress. Plaintiff did not have problems with her back, depression, or headaches prior to May 1990.
2. On 2 May 1990 plaintiff sustained injuries to her back and knees for which defendant admitted liability when she slipped on a wet floor and fell forward onto her knees and outstretched hands. Her neck went forward and backward when she fell, and soon thereafter her entire body began to stiffen up. Plaintiff continued to work for a few days following the injury until 8 May 1990 and has not worked since.
3. When plaintiff treated at the Physician's Immediate Care Center in the weeks immediately following the injury, she did complain of leg as well as back pain and the doctor there thought surgery may be required. Plaintiff then treated briefly with Dr. Dameron, who diagnosed muscular back ache and referred plaintiff to Dr. Hull, a neurologist. Dr. Hull's neurologic exam of plaintiff in June 1990 was normal and he diagnosed incipient fibromyalgia, which is characterized by chronic muscle pain and for which there is no cure.
4. In the fall of 1990 plaintiff moved to Florida with her husband and commenced treatment with Dr. Diamond, a chiropractor, in December 1990. Shortly thereafter, in February 1991 plaintiff requested a hearing seeking approval for treatment by Dr. Diamond. By Order filed 24 October 1991 Deputy Commissioner Ford approved 30 additional chiropractic treatments and ordered that the case remain on the hearing docket for trial of all issues. Plaintiff received well in excess of 30 additional treatments from Dr. Diamond before this case came up for hearing before the undersigned in December 1993.
5. In May 1992 Dr. Diamond referred plaintiff to Dr. Afield, a neuropsychiatrist. Dr. Afield's testing revealed brain damage from the whiplash-type motion of plaintiff's head when she fell in May 1990. Dr. Afield treated plaintiff until 13 January 1993 for cervical compression with unresolved post-concussion syndrome and post-traumatic syndrome with depression. When Dr. Afield saw plaintiff recently on 9 June 1994, she remained severely depressed and nonfunctional. Plaintiff's depression is permanent and her prognosis is poor.
6. Over four years after the injury, plaintiff remains in constant pain in her back and experiences severe headaches. She can tolerate standing, walking and sitting only five to twenty minutes at most, and must lie down eight to ten times a day. These complaints developed after the injury of 2 May 1990 and persist to this day.
7. The injury of 2 May 1990 aggravated plaintiff's pre-existing asymptomatic degenerative disc disease in her back, resulting in physical limitations which render plaintiff unable to earn the same wages she was earning at the time of the injury in the same or any other employment. The conditions which Dr. Diamond treated were caused by the injury of 2 May 1990, and Dr. Diamond's treatment was reasonable and necessary to give relief from those conditions. There is a substantial risk that plaintiff will require future medical treatment of these conditions on an as needed basis.
8. Plaintiff requested approval for Dr. Diamond's treatment within a reasonable time (a few months) of initiating treatment.
9. Plaintiff never requested approval from the Industrial Commission for treatment by Dr. Afield. However, Dr. Afield was seen on a referral from Dr. Diamond, who was an approved physician, and Dr. Afield's treatment has been reasonable and necessary to give relief to plaintiff.
10. As a result of the injury of 2 May 1990, plaintiff suffers from debilitating back pain and severe depression, such that she is and has been unable to earn the same wages she was earning at the time of the injury in the same or any other employment since 8 May 1990. The conditions which disable plaintiff are permanent. Taking into account her limited education and work experience, and the permanent and debilitating nature of her psychiatric and physical condition, plaintiff has, as a result of the injury of 2 May 1990, lost the capacity to earn the same or any other wage in her former employment for defendant or any other employment for which she is otherwise qualified and will continue in such incapacity throughout her lifetime.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. As a result of the injury of 2 May 1990, plaintiff has suffered the total and permanent loss of her wage earning capacity, in that she is no longer able to earn the same or any wages in her former employment for defendant or any other employment for which she is qualified, thereby entitling her to ongoing permanent and total disability compensation continuing throughout her lifetime unless there is a change of condition. G.S. 97-29.
2. When plaintiff chooses her own doctor without authorization from defendant, she must request approval of the Industrial Commission for that treatment within a reasonable time. Plaintiff never requested authorization from the Industrial Commission for the treatment by Dr. Afield. However, plaintiff did request authorization for treatment by Dr. Diamond within a reasonable time, and because that treatment was reasonable and necessary to give relief, defendant shall be responsible for paying all expenses plaintiff incurred for treatment by Dr. Diamond. G.S. 97-25; Braswell v. Pitt County Memorial Hospital,106 N.C. App. 1 (1992). Dr. Diamond referred plaintiff to Dr. Afield, the neuropsychiatrist.
Rule 407 (4) of the Workers' Compensation Rules of the North Carolina Industrial Commission (amended effective January 1, 1992,) provides as follows:
"The responsible employer or carrier shall pay the statements of medical compensation providers to whom the employer has been referred by the authorized treating physician, unless said physician has been requested to obtain authorization for referral or tests . . ." There is no convincing evidence of record which would tend to show that Dr. Diamond was told by the defendant-employer to obtain authorization for referrals and tests. The treatment provided by Dr. Afield was necessary and did tend to give relief. Accordingly, in light of all of these factors, the undersigned, in their discretion at this time, have determined that the treatment provided by Dr. Afield should be approved, and defendant shall also be responsible for paying all expenses plaintiff incurred for treatment by Dr. Diamond. G.S.97-25.
3. Pursuant to G.S. 97-29, in cases of total and permanent disability, defendant shall be responsible for paying all medical expenses plaintiff incurs hereafter for treatment of her back and depression during the remainder of her lifetime.
* * * * * * * * * * * * * *
Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendant shall pay plaintiff on account of her permanent and total disability compensation at the rate of $160.00 per week commencing as of the date of last payment and continuing throughout plaintiff's lifetime unless she sooner experiences a change of condition. Such compensation as has accrued shall be paid in a lump sum.
2. An attorney fee in the amount of 25 percent of the compensation awarded herein is hereby approved for Mr. Newton. Defendant shall forward every fourth compensation check payable hereunder to plaintiff's counsel for his fee.
3. Throughout her lifetime defendant shall pay all of plaintiff's reasonable and necessary medical expenses incurred as a result of the injury by accident giving rise hereto, when bills for the same have been submitted to and approved by the Industrial Commission. Defendant shall be responsible for paying for the treatment plaintiff received from Dr. Afield up through 9 June 1994 and continuing as necessary, as well as for the treatments provided by Dr. Diamond.
4. Defendant shall pay the costs.
5. Defendant shall pay an expert witness fee in the amount of $250.00 to Dr. Newman, $350.00 to Dr. Hull, $250.00 to Dr. Vega, $250.00 to Dr. Saunders, $300.00 to Dr. Dameron, and $500.00 to Dr. Afield.
IT IS FURTHER ORDERED that this case be REMOVED from the Full Commission hearing docket.
This the __________ day of ________________________, 1995.
 S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________________ J. RANDOLPH WARD COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER
JHB/nwm 03/29/95