The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Tamara R. Nance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of finding of fact number 9 and conclusion of law number 2.
* * * * * * * * * * *
There is a Form 21 Agreement in the file which was approved by the Industrial Commission and is a part of the record. Pursuant to that Agreement plaintiff was paid temporary total disability benefits from 10 June 1993 to 4 July 1993.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. Eleven pages of medical records.
2. A letter from Mary Bishop to Mr. Perry dated 2 August 1993.
3. The first Forms 33 and 33R filed in this case.
* * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 34-year-old mother of two who attended school to the ninth grade. Since 1988 she has worked as a sewer for several employers in the Rocky Mount area. Just prior to going to work for defendant-employer she worked for Melvin's Quilting Company sewing comforters and pillows.
2. On 18 January 1993 plaintiff went to work for defendant-employer as a sewer. Her first job with defendant-employer involved sewing the backs of jeans together. This required her to use both hands to pull the jean material together. In early May she was transferred to the back risers job, a lighter job which just required that she hold, as opposed to pull, the material together and guide it through the machine. Plaintiff worked on 120 to 180 pairs of jeans an hour.
3. Plaintiff testified to the onset of sharp pains in her hands and arms on 9 June 1993 while pulling jean fabric together. Plaintiff reported a problem to her supervisor, Janet Pridgen, and she was sent by defendant-employer to Dr. Richards. Dr. Richards diagnosed wrist strain, splinted plaintiff's wrists, and advised her to remain out of work until next visit on 16 June 1993. On 16 June 1993 Dr. Richards diagnosed possible carpal tunnel syndrome and referred plaintiff to Dr. Kushner for nerve conduction testing. When plaintiff saw Dr. Kushner on 22 June 1993, her complaints were of bilateral hand pain. The results of the NCV were compatible with severe bilateral carpal tunnel syndrome.
4. Plaintiff was seen by Dr. Appert, an orthopaedic surgeon, on 5 July 1993 and 16 July 1993. On first visit Dr. Appert diagnosed bilateral deQuervain's disease based on a positive Finkelstein's test. He injected the tendons and released plaintiff to return to work. On second visit, plaintiff's Finkelstein's test was entirely negative and Dr. Appert could find no evidence of organic disease. Plaintiff complained of multiple arthralgias involving the hand, neck and knees, and her symptoms were "way out of proportion" to findings on exam.
5. On 9 July 1993 the parties entered into a Form 21 Agreement (which was subsequently approved by the Industrial Commission), pursuant to which defendant admitted liability for injury to "hand" occurring on 9 June 1993. The Agreement paid plaintiff temporary total disability benefits for the period she was out until she was released by Dr. Appert. The Agreement does not specify which hand or what disease or injury to the hand defendant was admitting liability for, which complicates this case because plaintiff's complaints to her doctors up to the date of the Agreement involved both hands, and plaintiff had been diagnosed with two different conditions, bilateral deQuervain's and bilateral carpal tunnel syndrome. Given the medical evidence in existence when the Form 21 was prepared by the defendant and executed, the Form 21 on its face is ambiguous. Defendant contends it admitted liability only for the right hand (although it does not specify what condition, e.g. tendonitis, carpal tunnel syndrome, or deQuervain's, it admitted liability for).
6. When plaintiff returned to work on the back risers job on 5 July 1993, she was able to perform her regular job to the satisfaction of her supervisors, except that she had multiple absences from work for reasons unrelated to her work-related injury. On 13 September 1993 she was terminated pursuant to defendant's attendance policy for excessive absenteeism. When she was warned and counseled regarding her excessive absenteeism, plaintiff did not tell anyone that a problem with her hand (s) was interfering with her ability to work.
7. Plaintiff has not worked or looked for work since 13 September 1993.
8. On 31 August 1993 plaintiff saw Dr. Lassiter for a second opinion. Exam was entirely normal except for mild tenderness over the medial condyle (the inner aspect of the elbow). Plaintiff gave a history of bilateral arm pain, but no numbness in the fingers or hands and no weakness. Dr. Lassiter ruled out carpal tunnel syndrome and instead diagnosed mild bilateral medial epicondylitis with some form of tendonitis.
9. Thereafter on her own, plaintiff sought medical treatment from Dr. Whitmer, Dr. Marsigli, and the Oakwood Medical Center. Moreover, there is insufficient evidence to find by its greater weight that any of this unauthorized treatment was reasonable and necessary to effect a cure, give relief, or lessen the period of plaintiff's disability.
10. When plaintiff was treated by Dr. Whitmer in early 1994, she complained of pain in both arms radiating to the shoulder as well as atypical pain in both legs, ankles and knees. Dr. Whitmer was unable to reach any conclusion as to the source of plaintiff's upper extremity complaints, but did not see any findings consistent with tendonitis, carpal tunnel syndrome, or deQuervain's. Yet when plaintiff saw Dr. Marsigli on 28 April 1994, he diagnosed carpal tunnel syndrome but thought it was a borderline case which was not disabling and which did not require treatment or surgery.
11. There is insufficient evidence to find by its greater weight that plaintiff's employment with defendant placed her at an increased risk of developing carpal tunnel syndrome, tendonitis, medial epicondylitis, or deQuervain's disease.
12. Plaintiff's condition has not worsened since she was released by Dr. Appert to return to regular work and since she performed that work without difficulty earning the same wages she was earning at the time of the injury until she was terminated for unrelated reasons in September 1993. At all times since 13 September 1993 plaintiff has retained the capacity to earn the same wages she was earning at the time of the injury performing her regular full-time job.
13. Plaintiff retains no permanent disability attributable to the injury of 9 June 1993.
* * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has suffered no wage loss or permanent disability since 5 July 1993 attributable to the injury of 9 June 1993 and is therefore not entitled to further benefits under G.S. § 97-29, G.S. § 97-30, or G.S. § 97-31.
2. Defendant shall not be responsible for paying for medical treatment plaintiff received from Dr. Whitmer, Dr. Marsigli or Oakwood Medical Center inasmuch as there is no evidence that such treatment was reasonable and necessary to effect a cure, give relief, and lessen the period of plaintiff's disability. G.S. § 97-25; Braswell v. Pitt County MemorialHospital, 106 N.C. App. 1 (1992).
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for further compensation under the Workers' Compensation Act is hereby denied.
2. Each side shall pay its own costs.
3. Defendant shall not be responsible for paying for medical treatment plaintiff received from Dr. Whitmer, Dr. Marsigli, or Oakwood Medical Center.
4. Defendant shall pay an expert witness fee of $250.00 to Dr. Lassiter, $250.00 to Dr. Marsigli, and $250.00 to Dr. Appert.
 S/ _________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/ _________________________ COY M. VANCE COMMISSIONER