RALPH DOUGLAS SHOEMAKER v. CREATIVE BUILDERS AND N.C. FARM BUREAU MUTUAL INSURANCE COMPANY

No. COA01-722

(Filed 4 June 2002)

**1. Workers' Compensation— disability—sufficiency of evidence**

The Industrial Commission did not err in a workers' compensation action by finding plaintiff to be totally and permanently disabled where he returned to work but was unable to maintain any employment for more than a few weeks, was unable to find regular work even with the assistance of a vocational specialist, and there was medical testimony that he would never be able to work again.

**2. Workers' Compensation— vocational rehabilitation—futile**

There was competent evidence in a workers' compensation action to support the Industrial Commission's finding that vocational rehabilitation was futile.

### 3. Workers' Compensation— medical expenses—motor vehicle accident after injury

The Industrial Commission did not err by concluding that defendants are responsible for medical expenses associated with plaintiff's motor vehicle accident where plaintiff injured his back while working as a carpenter, he contracted encephalitis after back surgery and was left with an organic brain injury, and he crashed his motor vehicle into a telephone pole during a seizure-like episode. Although the doctors are uncertain as to whether the seizure-like activity was due to an actual seizure or an anxiety or panic attack, they agree that either condition was the result of his cognitive or emotional disabilities caused by the compensable encephalitis.

### 4. Workers' Compensation— personality disorder—encephalitis after back surgery—injury as cause

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff's 1992 injury was the cause of his personality disorder where he contracted encephalitis after back surgery and one doctor testified that he could not relate any of plaintiff's symptoms to his encephalomalacia with any degree of medical certainty, but extensive medical records establish that the surgery for the back injury caused the encephalitis, which in turn resulted in plaintiff's cognitive and personality changes.

### 5. Workers' Compensation— depression—hospitalization— no prior approval

The Industrial Commission did not err by concluding that defendants were responsible for the cost of plaintiff's treatment for depression, insomnia, and severe panic attacks in a hospital where plaintiff did not receive prior authorization and there was no evidence of an emergency, but there was extensive evidence detailing the severity of plaintiff's emotional problems and the need for continuous medical treatment.

Appeal by defendants from opinion and award entered 16 January 2001 by Commissioner Dianne C. Sellers of the N.C. Industrial Commission. Heard in the Court of Appeals 14 March 2002.

*Patterson, Harkavy & Lawrence, L.L.P., by Henry N. Patterson, Jr. and Martha A. Geer for plaintiff-appellee.*

*Young Moore and Henderson P.A., by J.D. Prather and Dawn Dillon Raynor for defendants-appellants.*

THOMAS, Judge.

Defendants appeal from an opinion and award of the Industrial Commission (Commission) ordering them to pay compensation to plaintiff for permanent total disability in the amount of $253.53 per week, plus medical expenses and reasonable attorneys' fees. They set forth six assignments of error. For the reasons herein, we affirm.

The facts are as follows: Plaintiff, Ralph Douglas Shoemaker, worked as a carpenter for defendant, Creative Builders. On 14 July 1992, he suffered a back injury that caused him to undergo surgery. Plaintiff and defendants then executed an Industrial Commission Form 21, after which plaintiff began receiving temporary total disability compensation.

As a result of the back surgery, however, plaintiff experienced encephalitis, which in turn caused him to suffer a frontal lobe syndrome coupled with an organic affective disorder. These complications led plaintiff, who was described as a caring, emotionally strong person with a good personality prior to the injury, to become flippant, emotionally labile, euphoric, easily distracted, and uninhibited. He experienced lapses in judgment, scattered thinking, and significant impairment of attention and concentration skills. Because of the organic brain injury, plaintiff now suffers from a panic disorder and depression.

Dr. William Lestini, an orthopedic surgeon, performed plaintiff's back surgery. Lestini stated that plaintiff had reached maximum medical improvement and had sustained a 45% permanent partial disability to his spine. He limited plaintiff on a permanent basis to "light duty restriction as a trim carpenter." Dr. Barrie Hurwitz, a neurologist, found evidence of focal slowing in plaintiff's brain and later determined that plaintiff had significant psychological distress and cortical dysfunction consistent with encephalitis. Dr. Patrick Logue, a psychologist, agreed that plaintiff experienced significant cognitive deficits and psychological distress as a result of the encephalitis, and referred him to psychiatry.

Plaintiff was then evaluated by three psychiatrists. Dr. Victor Morcos gave a prognosis that plaintiff would not be able to function in a normal work environment because of his distractability, emotional instability, and jocular disinhibitive behavior. Plaintiff was seen by Morcos's partner, Dr. Raouf Badawi, who determined that plaintiff had a frontal lobe syndrome coupled with an organic affective disorder, and was unable to function even in a structured environment such as Goodwill Industries. Dr. Indu Varia later diagnosed plaintiff as suffering from obsessive compulsive disorder and panic disorder. Dr. Angus McInnis, plaintiff's family physician since 1976, noticed the post-surgery personality change as well.

Plaintiff attempted to work on a part-time basis constructing homes for Alan Miller, but was disruptive on the job site and dismissed. Plaintiff then worked with a private vocational specialist retained by defendants from August 1995 through April 1996. Both alone and with the specialist, plaintiff underwent an extensive but unsuccessful job search in Rockingham County. Brenda Wrenn, who had previously employed plaintiff at her landscaping business, rehired him but found his attention span to be too short to complete necessary tasks. She also dismissed plaintiff.

By order entered 9 December 1996, Deputy Commissioner Wanda Blanche Taylor found that plaintiff had sustained a compensable injury to his back. Deputy Commissioner Taylor amended the compensation rate for plaintiff's temporary total disability, which had been wrongly calculated, and awarded plaintiff reimbursement for travel expenses incurred for participation in the rehabilitation program and job search directed by defendants' vocational consultant.

In an administrative order dated 18 December 1996, Deputy Commissioner Taylor denied defendants' motion to compel plaintiff to participate in a thirty-day Goodwill Industries work skill evaluation program. Defendants appealed the order by filing a Form 33 Request for Hearing. In response, plaintiff asserted that the evidence supported denial of the motion. He claims to be permanently and totally disabled and therefore should not be required to engage in a futile search for employment.

In January, 1997, prior to the hearing, plaintiff was driving a motor vehicle and crashed into a power pole. Plaintiff said he started to jerk all over just before the collision and his hands were "spinning." He next remembered a state trooper knocking on his window.

Plaintiff was treated for fractures resulting from the car wreck. He had at least two additional seizure-like episodes in April.

Plaintiff was admitted to Greensboro Charter Hospital on 30 June 1997 and remained there until 9 July 1997 under the care of Dr. Rupinder Kaur, a psychiatrist, for treatment of depression, insomnia, and severe panic attacks. Kaur's findings were consistent with the diagnosis of a frontal lobe syndrome with affective lability due to encephalitis. Approximately a year later, plaintiff was again hospitalized at Greensboro Charter Hospital after he told Kaur that he was suicidal and planned to shoot himself. Kaur said that plaintiff's depression requires a psychiatrist to monitor his condition and medications for the remainder of his life. She also said plaintiff is not capable of entering into the workplace or even a sheltered workshop because of his psychiatric problems, namely, his inability to deal with people. Hurwitz, meanwhile, treated plaintiff again several times in 1997. He considered the option of basic work for plaintiff in a sheltered workshop, but eventually came to the conclusion that it would not be appropriate because of plaintiff's personality disorder.

At the hearing in September, 1997, Deputy Commissioner William C. Bost ruled in favor of plaintiff, finding that he was not required to participate in a vocational evaluation at Goodwill Industries, and that he was permanently totally disabled and thus entitled to compensation for the remainder of his life. Defendants appealed to the Full Commission.

By order entered 16 January 2001, the Full Commission found that "[s]ince January 24, 1995, plaintiff has been incapable of earning wages . . . as a result of physical, cognitive[,] and emotional impairments from his July 14, 1992 injury by accident and related encephalitis." It further concluded that defendant is "totally and permanently disabled . . . for the remainder of his life." The Commission awarded plaintiff benefits in the amount of $253.53 per week for the remainder of his life, reasonable medical expenses, and $750.00 in attorneys' fees because of defendants' appeal to the Full Commission. Defendants appeal.

In reviewing an award of the Commission, the appellate court is limited to determining whether there was competent evidence before the Commission and whether the findings of fact support the Commission's conclusions of law. *Deese v. Champion Int'l. Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission's find-

ings of fact are conclusive on appeal even when there is evidence to support contrary findings. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986).

[1] By defendants' first assignment of error, they contend the Commission erred in finding plaintiff to be permanently and totally disabled. They point to evidence that he returned to work and earned wages from at least two employers while he was receiving total disability compensation. However, "mere proof of return to work is insufficient to rebut the . . . presumption [of disability]," because capacity to earn in suitable employment is the "benchmark test of disability." *Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996), *disc. review denied*, 345 N.C. 343, 483 S.E.2d 169 (1997).

Here, the facts establish that plaintiff was unable to find regular work even with the assistance of a vocational specialist. He was unable to maintain any employment for more than a few weeks. Moreover, plaintiff offered medical testimony that he would never be able to work again. The competent evidence presented to the Commission supports its finding that plaintiff is totally and permanently disabled. This assignment of error is overruled.

[2] By defendants' second assignment of error, they contend the Commission erred by finding plaintiff would not benefit from participating in a vocational rehabilitation program at Goodwill Industries.

The Commission may order vocational rehabilitation which it determines to be reasonably necessary. *See* N.C. Gen. Stat. § 97-25 (1999). In support of their argument, defendants cite the deposition of McInnis, who stated that plaintiff "could be employed with a lot of help."

McInnis, however, continued: "But as an independent employee . . . with all the responsibilities that people normally have, I think there are problems with that." McInnis further stated that defendant would need to work with "people that are very . . . sympathetic . . . to his problems" and are "able [and] willing to work with him." He was then asked if, in his opinion, it would be appropriate to first put plaintiff into something like a sheltered workshop in order to develop a vocational rehabilitation plan. McInnis replied: "I think so. I haven't discussed it with him, and I don't know how he would react to it."

SHOEMAKER v. CREATIVE BUILDERS

[150 N.C. App. 523 (2002)]

Kaur, who most recently treated plaintiff, repeatedly recommended against sending plaintiff to Goodwill Industries. Badawi concurred, saying plaintiff could not function "even in such a structured environment as Goodwill Industries offers." Requiring him to work even in a structured environment would, according to Badawi, ultimately lead to hospitalization. The Commission's finding that vocational rehabilitation in this case is futile is supported by competent evidence and we therefore reject this assignment of error.

[3] By their third assignment of error, defendants contend the Commission erred in concluding that defendants are responsible for medical expenses associated with plaintiff's motor vehicle accident on 30 January 1997.

"The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." 1 Arthur Larson, *The Law of Workmen's Compensation* § 10.01 (2000). Plaintiff testified here that the accident was precipitated by seizure-like activity. Although the doctors are uncertain as to whether the seizure-like activity was due to an actual seizure or an anxiety or panic attack, they agree that either condition was the result of his cognitive or emotional disabilities caused by the compensable encephalitis. In either case, the relationship is direct. Further, case law clearly establishes that injuries resulting from an intervening cause do not preclude compensation, unless the employee intentionally caused the subsequent injury. *See English v. J.P. Stevens & Co.*, 98 N.C. App. 466, 471, 391 S.E.2d 499, 502 (1990). There is substantial, competent evidence adequately supporting the finding that plaintiff's accident is the direct and natural result of his brain damage. We overrule this assignment of error.

[4] By defendants' fourth assignment of error, they argue that plaintiff's 1992 injury was not the cause of his personality disorder. Defendants concede that plaintiff's encephalitis came into existence after the injury in 1992, but contest the existence of a causal link between the injury and the encephalitis. The causal link between the encephalitis and plaintiff's personality disorder, defendants maintain, is even more tenuous.

In support of their argument, defendants rely solely on the deposition testimony of Hurwitz, who said that he could not "relate any of [plaintiff's] symptoms to his encephalomalacia with any degree of medical certainty." Extensive medical records, however, establish

that the surgery for the back injury caused the encephalitis, which in turn resulted in plaintiff's cognitive and personality changes. In 1994, Lestini specifically related plaintiff's encephalitis to his back injury. The diagnoses of Morcos, Varia, and Logue also confirm the causal connection between the compensable injury and ensuing personality disorder. Kaur and McInnis agree that the encephalitis caused plaintiff's personality problems. Therefore, the Commission's findings are supported by competent evidence and we reject this assignment of error.

[5] By their final assignment of error, defendants contend the Commission erred in concluding that they are responsible for the cost of plaintiff's treatment at Charter Hospital beginning on 30 June 1997. Defendants argue that plaintiff did not receive prior authorization for admission and there is no evidence his admission was an emergency under N.C. Gen. Stat. § 97-25 (1999). Defendants also point out that plaintiff had an appointment on 30 June 1997 with the physician who had treated his fractures from the automobile accident, but admitted himself to Charter Hospital instead. Had plaintiff kept his appointment, defendants claim, the doctor likely could have assisted plaintiff and defendants in coordinating mutually agreeable psychologic or psychiatric treatment.

Section 97-25 states that "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25. Under the statute "an injured employee may select a physician of his own choosing to attend, prescribe and assume the care and charge of his case, subject to the approval of the Industrial Commission." *Id.* Thus, a plaintiff may choose his own physician provided he: (1) obtains the approval of the Commission within a reasonable time after such procurement; and (2) the treatment sought is for recovery or rehabilitation, or to "give relief." N.C. Gen. Stat. § 97-2(19) (1999); *Braswell v. Pitt County Mem. Hosp.*, 106 N.C. App. 1, 5, 415 S.E.2d 86, 88 (1992). "Approval is not necessary prior to [the injured employee] seeking assistance from another physician." *Id.* Moreover, an emergency is not required for the Commission to award compensation under the statute. Even in the absence of an emergency, the employee is entitled to choose a physician for treatment, subject to the approval of the Commission. *Schofield v. Tea Co.*, 299 N.C. 582, 591, 264 S.E.2d 56, 62 (1980).

Here, the Commission found that the hospitalization "was necessary to treat plaintiff's depression and in particular because plaintiff was suicidal." It then concluded as a matter of law that the treatment

was necessary to "effect a cure or give relief from . . . the emotional effects of plaintiff's injury." There is extensive evidence in the record detailing the severity of plaintiff's emotional problems and the need for continuous medical treatment. Again, the Commission's findings are clearly supported by competent evidence and we overrule this final assignment of error.

AFFIRMED.

Judges MARTIN and HUDSON concur.