***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
All parties are properly before the court and that the court has jurisdiction of the parties and the subject matter
The parties to this action are subject to the Act, that the plaintiff was covered under Carpet House of Boone, Inc.'s Worker's Compensation policy and Builders Mutual Insurance Company is the servicing agent for Carpet House.
All parties have been correctly designated and that there is no question as to misjoinder or nonjoinder of parties.
 ***********
The following documents were introduced into evidence as:
 EXHIBITS
Stipulated #1: Pre-Trial Agreement.
Stipulated #2: Dr. Patrick Craft medical record.
Stipulated #3: Dr. Joseph Barker medical records.
Stipulated #4: Dr. John C. Newell medical record.
Stipulated #5: Expense Receipts, September 7, 1999 to January 6, 2000.
Stipulated #6: Plaintiff's IRS Form 1099.
Stipulated #7: Plaintiff's Answers To Defendants' Interrogatories.
Stipulated #8: Dr. Susan McAdams medical records.
Stipulated #9: Form 18, filed March 22, 2000.
Stipulated #10: Form 61
Stipulated #11: Form 33
Stipulated #12: Form 33R
Defendant's Exhibit #1: Form 18, executed March 18, 2000.
Defendant's Exhibit #2: Carpet House checks and computer summary of payments.
Defendant's Exhibit #3: Plaintiff's weekly invoices for work performed.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT Background
Plaintiff is married and had three children, ages 13, 12 and 10. Plaintiff's wife did not work outside their home until the incidents leading to this workers' compensation claim. He has a ninth grade education, attending specialized classes. He is functionally illiterate, but can sign his name. Plaintiff withdrew from school at age fifteen and sought no further education or formal training in any profession since leaving high school.
Subsequent to the hearing in this matter, plaintiff died as a result of blunt force injuries to the head on April 9, 2001. There is no suggestion that plaintiff's death is attributable to the work related injuries alleged in this workers' compensation action.
 Occupational History
Plaintiff's employment history primarily consists of heavy manual labor in construction excavation and flooring installation. Plaintiff entered into carpet and flooring installation as a trade at age twenty-four.
Plaintiff worked for number of general contractors during his career, but generally not working for more than one general contractor at any given time. Plaintiff installed a variety of flooring materials. This activity requires moving furniture and other fixtures in preparation for installation. Installing requires lifting from ten pounds to over four hundred pounds.
 Preexisting Back Injury
Plaintiff has a significant history of back pain and complaints preexisting his December 1999 accident resulting in this workers' compensation claim. Plaintiff was involved in a motor vehicle accident in 1998. Plaintiff admitted injuring his collarbone but denied any injury to his back as a result of that accident. Plaintiff sustained a work related injury to his back in January 1998 resulting in continued medical treatment for chronic back pain through December 6, 1999. Plaintiff contends that he was working for defendant-employer at the time of this injury and he submitted his medical bills to defendants for payment. A workers' compensation claim was not filed.
Dr. Joseph D. Barker (hereinafter "Dr. Barker"), plaintiff's family physician, treated plaintiff for back pain, without radiculopathy, from March 1999 through December 1999. In November 1999, Dr. Barker performed a straight leg raise test on plaintiff that was negative for radiculopathy.
Dr. Barker prescribed medications for arthritis and pain during part of this period, increasing the strength of the medications because of plaintiff's reports of increasing pain. In October 1999 Plaintiff's medication was increased to Vicodan, Extra Strength.
In November 1999, plaintiff reported to Dr. Barker that he had injured his back and was out of prescription medication. Dr. Barker did not note or recall the nature of the "injury."
Dr. Barker last examined plaintiff prior to the alleged accident leading to the incidents involving this workers' compensation claim on December 5, 1999. Dr. Barker believed that plaintiff's condition at that time was musculo-skeletonal back pain, but could not rule out other causes of the pain.
 Plaintiff's Relationship with Carpet House and Business Operation
Plaintiff established a subcontractor relationship with defendant-employer, owned by James Bryce Lewis on two occasions prior to December 1999, each separate period lasting approximately one year. Plaintiff installed flooring for defendant-employer exclusively during the time period relevant to this workers' compensation claim.
Defendant-Employer paid plaintiff per yard of material of installed and an additional amount for other services, such as moving furniture and other functions necessary to the removal and installation of flooring. Plaintiff paid for his own materials, purchasing them almost exclusively from defendant-employer.
During December 1999 plaintiff had a working relationship with Mack Graham III, plaintiff's brother-in-law, and Mack Graham Jr., plaintiff's father-in-law. Mack Graham III was paid approximately twenty-eight percent of plaintiff's net earnings. Mack Graham Jr. assisted Plaintiff generally for free occasionally and was paid twenty to thirty dollars a day on occasion. There are no precise records of these payments.
After the date of injury, plaintiff paid Mack Graham III twice the normal twenty-eight percent of the net income because Mack Graham Jr. was performing all duties.
Sharon Morrison kept plaintiff's business records, what minimal records exist. As a general practice, defendant-employer paid plaintiff by check, which plaintiff then cashed and gave his wife cash, some of which was placed in a family bank account. Plaintiff would pay his workers in cash. On occasion, plaintiff would actually give his wife defendant-employer's check that was deposited in the family bank account.
From Sharon Morrison's testimony it appears that plaintiff started work with defendant-employer in April 1999. Prior to that date, plaintiff worked with another flooring company, Midway Carpet and Tile, for approximately six months.
Defendant-Employer's records indicate records of payments since the latter part of July 1999. Plaintiff's last day of work was February 21, 2000. According to Lewis, plaintiff and defendant-employer ended their relationship because of a disagreement what work plaintiff would perform for defendant-employer.
 Plaintiff's Accident
Plaintiff was installing carpet at a dentist's office in December 1999 for defendant-employer when he sustained an injury to his back. Plaintiff's Form 18 contends the accident was December 10, 1999. He contends that while lifting filing cabinets and carpet to move them he felt a "pop" accompanied by immediate pain radiating into his legs and up into his arms and fingers.
Mack Graham III, working with plaintiff at the time, confirms that the injury occurred on the first day of this particular job, a Monday. Mack Graham Jr. can only date the accident as occurring several weeks before Christmas. December 10, 1999 as alleged in plaintiff's Form 18 is a Friday.
Mack Graham Jr. was working on one side of the room in which plaintiff was lifting filing cabinets. He testified that plaintiff was lifting a cabinet and went down on the floor sideways and rolled over. Mack Graham Jr. immediately attended to plaintiff, who reported that something had "popped" in his back. Mack Graham III testified that he came into the room and observed plaintiff lying on his back on the floor in the dentist's office. Both Grahams had to perform plaintiff's work as well as their own.
Plaintiff contends that he returned to defendant-employer and reported his injury. Both Grahams' testimony supports plaintiff's contention that he reported the injury to an employee of defendant-employer on the date of the injury. Mack Graham Jr. testified that he was present when plaintiff reported his injury to the principals of defendant-employer. Lewis told plaintiff that his services were needed to finish the job on which he was working because defendant-employer had no one to finish the project. Lewis does not recall this conversation with plaintiff, even though he noted that carpet installers frequently complain of back pains.
Cathy Goodman, who was employed as a salesperson at defendant-employer during 1998 and continuing during the relevant time, confirmed that plaintiff reported the injury to his back. She confirmed that plaintiff was having difficulty in walking and that he was asked to finish the project on which he was working. Goodman was fired from defendant-employer in March 2000 because of a dispute over a commission check that she felt she was entitled. Goodman has no social relationship with plaintiff outside of their working relationship.
Plaintiff cannot remember a specific date even though the Form 18 filed dates the injury as December 10, 1999. Mack Graham III also cannot remember a specific date.
Sharon Morrison, plaintiff's wife, dates the injury on December 17, 1999 because she remembers the accident occurring near Christmas. She contends that plaintiff called her immediately after the accident. When he came home that evening she had to assist him removing his shoes and the next morning she had to put his shoes on him because he could not bend over.
Brian Hass, a subcontractor working at the dentist's office during the same period of time, testified that he worked on the project from December 15 through 17, 1999. He recalls that on December 17, 1999, plaintiff was complaining of his back hurting, but he could not recall the intensity of the pain reported or its effect on plaintiff.
Lewis' testimony establishes the date of the accident as December 13, 1999. He testified that the dentist's office was closed on this date to permit the carpet installation. Defendant-Employer paid plaintiff for the work completed on December 17, 1999.
Plaintiff did not seek any medical treatment for three to four weeks following his injury, contending that defendant-employer wanted other installation projects completed. Plaintiff testified that because of his injury he was unable to perform his usual functions, being limited to overseeing the performance of the work and driving. Mack Graham III and his father performed all of the manual duties while plaintiff essentially worked in a supervisory role.
Sharon Morrison testified that her husband would not go to the doctor because "he was too proud of a man," who has always supported his family. She noted that she had never had to work until plaintiff had spinal surgery because plaintiff, in his family's tradition, viewed being the wage earner as his family role.
According to Dr. Barker, plaintiff's first mention of the December 1999 back injury was on February 22, 2000. Plaintiff specifically reported lumbar pain that radiated into his right leg. Dr. Barker objectively noted minor muscle spasms on the right side of the lumbar spine as compared to the left lumbar spine and asymmetry between the lumbar spine and pelvis, between the right and left side. X-rays were recommended.
Dr. Barker's records and testimony support the conclusion that plaintiff did not mention any back injury to Dr. Barker following plaintiff's last office visit on December 6, 1999 and February 22, 2000. During this period, plaintiff had two office visits with Dr. Barker related to plaintiff's preexisting problems with high blood pressure; January 25, 2000 and February 7, 2000. During the period, Sharon Morrison had called Dr. Barker's office on December 20, 1999 and January 13, 2000 requesting medications for a respiratory illness plaintiff contracted, but she did not mention plaintiff's back injury.
Plaintiff contends that he did not mention his back injury to Dr. Barker prior to February 25, 2000 because he was continuing to receive pain medication.
Sharon Morrison contends that she called Dr. Barker's receptionist when the injury occurred and the receptionist referred her to Dr. Barker's nurse, the latter informing her that plaintiff should increase his pain medication on Dr. Barker's instructions. A second phone call was alleged to have been placed to Dr. Barker's office approximately fifteen days later because plaintiff was out of pain medication. She contends Dr. Barker's office called in a prescription to plaintiff's pharmacy prior to a January 25, 2000 office visit with Dr. Barker.
Dr. Barker's medical notes do not support Sharon Morrison's testimony that she called Dr. Barker's office relative to plaintiff's back injury.
Plaintiff was completing the installations for defendant-employer when he had a seizure on a work site on January 21, 2000. He testified that Mack Graham Jr. was not immediately available on the work site to move some furniture and, therefore, plaintiff was actively working to move some the furniture when he suddenly experienced a seizure. Mack Graham Jr. walked into the room when plaintiff was undergoing the seizure and called for emergency assistance. Plaintiff sought immediate medical treatment for the seizure and was hospitalized one day. Plaintiff does not contend that the seizure is work related despite the fact that he testified that the seizure occurred because of stress and pain, the later presumably being related to his back pain.
Plaintiff sought continued care for the seizure from Dr. Barker. Sharon Morrison testified that she was present during plaintiff's January 25, 2000 office visit and plaintiff's back was discussed with Dr. Barker, Sharon Morrison requesting that a MRI or x-ray be performed. During cross-examination, plaintiff contended that he informed Dr. Barker of his injury during this time and he "missed it or whatever."
Dr. Barker's medical notes and recollection do not corroborate that he or his office staff was informed of the injury on January 25, 2000.
Plaintiff and his wife returned to Dr. Barker on February 7, 2000 to pursue investigation of the seizure. No specific notations were made regarding plaintiff's acute back condition.
Plaintiff last worked for defendant-employer on February 21, 2000 when the record evidence establishes that he last received a payment for work performed. Plaintiff testified that he was receiving defendant-employer's checks in his name following his December 1999 injury but Mack Graham III and Mack Graham Jr. were actually performing the work. He testified he was only supervising. Sharon Morrison testified that plaintiff abandoned his "supervisory" role during the last week of January 2000. The record indicates that the amount of the payments received from defendant-employer following his alleged injury were less than the amounts earned prior to the alleged injury, which plaintiff attributes to his inability to perform labor in completing job assignments.
Dr. Barker first noted plaintiff's back pain radiating into the lower extremities on February 22, 2000, the day following the termination of his relationship with defendant-employer. Dr. Barker did not note and does not recall that plaintiff explained that he had injured his back while working for defendant-employer. Dr. Barker ordered an MRI revealing degenerative changes to the lower back and a left peri-central herniation at L5 — S1 with an extruded fragment.
Lewis contends that he first recalls becoming aware of plaintiff's injury a week or two after plaintiff's relationship with defendant-employer ended on February 21, 2000. Sharon Morrison called Lewis requesting forms to file a workers' compensation claim.
Dr. Barker referred plaintiff to Dr. A. Gregory Rosenfeld, a neurosurgeon. Dr. Rosenfeld first examined plaintiff on March 21, 2000. Dr. Rosenfeld recorded plaintiff's history as having lifting rugs weighing hundreds of pounds when he developed low back pain that worsened over several days.
Dr. Rosenfeld performed surgery to repair plaintiff's ruptured disc. The surgical procedure was without incident.
While recuperating at home, plaintiff was getting out of his bathtub when he slipped and "sat down" on the edge of the tub. Plaintiff's recovery deteriorated. A second surgery was required to repair a recurrent disc herniation at L5-S1. Dr. Rosenfeld referred plaintiff to a pain clinic, where an epidural and muscle stimulator were recommended, and to physical therapy as a part of his rehabilitation.
Dr. Rosenfeld treated plaintiff for some eleven months, to February 2001. Plaintiff died prior to his recovery from the second surgery. At the date of his death, plaintiff had not been released to return to work. Dr. Rosenfeld opined that he would have assigned a fifteen percent permanent total disability rating at that point.
 Causation of Injury
Counsel for defendants framed a lengthy hypothetical question to Dr. Barker soliciting his opinion as to whether or not plaintiff's alleged accident in December was a "direct approximate cause" of plaintiff's radiating back symptoms Dr. Barker treated in February 2000. Plaintiff's counsel altered several of the facts to be assumed and reposed the question. Thereafter, both attorneys reposed versions of the hypothetical question to solicit Dr. Barker's opinion as to whether or not plaintiff's lumbar condition with pain radiating into the extremities was causally related to plaintiff's alleged accident in December. The essence of Dr. Barker's testimony is that he found it unusual that plaintiff had not more specifically and timely reported the injury. Plaintiff's failure to timely report was "unusual" in Dr. Barker's estimation and made it less likely, in his opinion that the employment related event occurred. He cannot, however, rule out the possibility that the injury had occurred as ultimately reported by plaintiff and such injury could produce plaintiff's ruptured disc. Ultimately, Dr. Barker's attempt to distinguish between the competing hypothetical questions produced sufficient confusion that he stated, "Now, I hope the Judge just takes this and throws that out."
Dr. Rosenfeld testified that plaintiff's herniated disk was consistent with an injury. Dr. Rosenfeld further testified that plaintiff's seizure episode, in which he hit is back, could have caused plaintiff's herniated disc.
Counsel for both parties offered competing hypothetical questions to Dr. Rosenfeld to solicit Dr. Rosenfeld's opinion as which was more likely to have caused plaintiff's herniated disc; the presumed injury in December or the events related to the seizure. Dr. Rosenfeld testified that each event was more likely than the other depending on the particular facts included in each hypothetical. Dr. Rosenfeld cogently concluded:
 He may have injured the disc when he fell [during the seizure] or when he was lifting up the carpet in December, but then when he had a seizure it resulted in the disc herniating. I mean, there are so many unknown factors here. And I guess you could change the hypotheticals so the one would be more probable than the other, but there are just a lot of unknowns. If you change the hypothetical, I think you need to change the answer to the question. But I think in a lot of situations like these, you have to go with what is documented and written as a part of the medical records. And I don't know whether . . . that has been documented whether there were people that saw him strain himself when he was lifting the carpet and had to curtail his activity, I don't know of that.
 Credibility and Determination
Defendants effectively impeached the testimony of plaintiff and his wife to an appreciable degree in the following representative matters:
 After the alleged accident in December 1999, involving radiating pain into his legs, plaintiff did not seek emergency treatment or an immediate treatment with Dr. Barker. In contrast, plaintiff timelier sought medical treatment for his 1998 injury, respiratory condition in late December 1999 and seizure disorder in January 2000.
 Despite the alleged severity of pain between the date of the accident and the office visit with Dr. Barker in early February 2000, no changes in the strength of plaintiff's pain medication was made.
 Sharon Morrison described plaintiff as having knots on his back following the injury, as if he were having muscle spasms. Dr. Barker's notes fail to document any abnormality resembling Sharon Morrison's lay description until February 2000.
 Plaintiff told Dr. Rosenfeld that his injury occurred five or six months prior to his first visit with Dr. Rosenfeld in March 2000. The time frame reported to Dr. Rosenfeld would predate an injury in December 1999 by several months.
 Plaintiff paid income taxes for only "several years" during the last ten years, and did not file tax returns or seek extensions of time to file tax returns for 1998 and 1999.
The testimony of plaintiff and his wife, uncorroborated, would be insufficient to find that plaintiff sustained a work related injury as alleged in this workers' compensation action.
Mark Graham Jr., Mack Graham III and Goodman corroborate plaintiff's injury in December 1999. Despite the Grahams' family relationship to plaintiff, their testimony as to the occurrence of plaintiff's accident is compelling. Mark Graham's demeanor as a witness strongly conveyed a sense of truthfulness. His answers to questions were concise, direct and resonated as factual. It should be particularly noted that Mark Graham conceded a lack of specific knowledge as to the date of the occurrence even though he could have fabricated the presumed correct or answer perceived as necessary without detection. Mack Graham III's testimony was persuasive as well for similar reasons.
Goodman's testimony was equally compelling. Even though she separated from her employment with defendant-employer over a dispute in commissions, her demeanor at hearing did not resonate as biased. Her testimony was certainly more compelling than Lewis' testimony that he could not "recall" plaintiff reporting the injury on the day it occurred in December 1999.
The greater weight of the evidence establishes that plaintiff sustained an injury to his back while working for defendant-employer on December 13, 1999. That date is a Monday, which would have been the first day of work at the dentist's office. The date is derived from the testimony of Haas and Lewis. Hass clearly remembers that his last day of work was December 17, 1999, a Friday, and he had been on site for three days. From Hass' testimony the first day of work on site would have been December 13. Lewis' testimony would support this date as well.
The greater weight of the evidence compels a finding that plaintiff's injury was specifically related to moving filing cabinets and carpet on December 13, 1999, which aggravated his preexisting back condition and resulted in a herniated disc.
 Average Weekly Wage Compensation Rate
Sharon Morrison estimated that plaintiff's net income was $800.00 per week from April through November 1999. Plaintiff contends an average weekly wage in excess of $1,000.00 in the Contentions and Briefs submitted in this matter.
Defendant-Employer prepared a Federal Tax Form 1099 for the period plaintiff worked in 1999. The form lists aggregate payments of $31,960.10.
Plaintiff failed to file Federal or State Income Tax returns as required by law. Detailed records regarding plaintiff's income and expenses were given to their tax advisor, who had left the State of North Carolina for a considerable period, and were not available to plaintiff.
The greater weight of the evidence, based upon Lewis' testimony, is that plaintiff started work for defendant-employer in July 1999. The amount paid in 1999 represents payments for twenty-six weeks.
From the gross amount paid, plaintiff purchased almost all of his supplies from defendant-employer. The expenses submitted for the four-month period from September through December 1999 amount to $2,667.06. Plaintiff's average monthly expenses were $666.67. Plaintiff's aggregate expense for supplies is $4,062.00 for the six-month period worked in 1999.
Plaintiff incurred automobile insurance expense of $285.36 for the six months of 1999 and $900.00 of expenses for gasoline.
Plaintiff paid Mack Graham Jr. $20.00 to $30.00 a day for two or three days of work a week. Mack Graham Jr. would also work for no wages on occasion. Averaging the amounts and days per week worked results in labor costs of $50.00 per week, $1,200.00 for the six months of 1999 worked.
Plaintiff's net profit is $25,574.12. From this amount, plaintiff paid Mack Graham III, twenty-eight percent, $7,160.75 for the six-month period worked in 1999.
Plaintiff's earnings for the period from July through December 1999 were $25,574.12 or $708.21. This average weekly wage, as contended by defendant-employer, comports more closely to that estimated by Sharon Morrison at trial.
Plaintiff's weekly compensation rate is $472.16.
Plaintiff's counsel of record has provided valuable legal services, including, but not limited to the trial of this workers' compensation action. A reasonable attorney fee for the services rendered is twenty-five percent of the disability payments awarded pursuant to this Opinion and Award.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
Plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer on December 13, 1999 aggravating his preexisting lower back conditions and resulting in a disc herniation. N.C. Gen. Stat. § 97-2(6); Shoemaker v. Creative Builders, ___ N.C. App. ___,563 S.E.2d 622 (2002) The rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.
Average weekly wages is defined as the earnings of the injured employee in the "employment in which he was working at the time of injury. . . ." N.C. Gen. Stat. § 97-2(5) (emphasis added). The Workers Compensation Act provides five formulas for calculating average weekly wages, the Act proscribing the order of preference for the method to be used. N.C. Gen. Stat. § 97-2(5); E.g, Bond v. Foster Masonry, Inc., ___ N.C. App. ___, 532 S.E.2d 583 (2000). Of the five statutory methods for computing average weekly wage, the first and second methods of calculating plaintiff's average weekly wages are inapplicable because plaintiff was not employed for 52 weeks prior to his injury. The third method produces results that are fair to all the parties. N.C. Gen. Stat. § 97-2(5). Plaintiff's average weekly wage is $708.21 producing a weekly compensation rate of $472.16. N.C. Gen. Stat. § 97-2(5); Hodgin,Employee, Plaintiff V. Hodgin Carpet, Employer, et. al., Defendants
(I.C. No. 924604, May 28, 2002) (calculation of average weekly wage using 1099 as basis of determination).
Plaintiff was temporarily totally disabled from February 21, 2000 through the date of plaintiff's death on April 9, 2001. N.C. Gen. Stat. § 97-29.
Plaintiff sustained a fifteen percent permanent total disability to his back requiring compensation of his permanent partial disability for 45 weeks. N.C. Gen. Stat. § 97-31(23).
Plaintiff is entitled to payment of all medical expenses incurred as a result of his injury to on December 13, 1999. N.C. Gen. Stat. § 97-25.
When an employee receives or is entitled to temporary total disability benefits which have not been paid at the date of the employee's death, the amount due is payable to the estate of the deceased employee. Inmanv. Meares, 247 N.C. 661, 101 S.E.2d 692 (1958).
When an employee is entitled to receive disability compensation for an injury covered by N.C. Gen. Stat. § 97-31 and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made: first, to the surviving whole dependents; second, to partial dependents, and, if no dependents, to the next of kin as defined in the Article; if there are no whole or partial dependents or next of kin, then to the personal representative, in lieu of the compensation the employee would have been entitled to had he lived. N.C. Gen. Stat. § 97-37.
Plaintiff's counsel of record has provided valuable legal services and a reasonable attorney fee is twenty-five percent of the disability benefits awarded Plaintiff. N.C. Gen. Stat. § 97-80.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Defendants shall pay plaintiff temporary total disability benefits at the compensation rate of $472.16 from February 21, 2000 through the date of plaintiff's death on April 9, 2001. The amount awarded shall be paid in one lump sum to the estate of the deceased employee subject to the attorney fee awarded hereinafter and subject to verification of the existence of the deceased employee's estate. Since counsel for plaintiff did not comply with the prior Order directing him to submit to the Industrial Commission Letters of Administration or other appropriate documents regarding the estate of the deceased for additional orders directing defendants to pay the benefits awarded, counsel for plaintiff shall hereafter provide this information to both the Industrial Commission and defendants.
Defendants shall pay plaintiff $21,247.20 (45 weeks x $472.16) for permanent partial disability. This amount shall be paid in one lump sum subject to the attorney fee awarded hereinafter. Said sum is payable to those wholly dependent upon plaintiff at the date of his death. Since plaintiff's counsel did not comply with the prior Order directing him to provide all relevant information regarding the deceased's children in order that additional orders can be entered directing payment of benefits for temporary total disability, plaintiff's counsel shall hereafter provide this information to both the Industrial Commission and defendants.
Defendants shall pay all medical expenses incurred by plaintiff that are reasonably related to his accident on December 13, 1999 when the bills have been submitted and approved by the Industrial Commission as provided by law and Rules of the Industrial Commission.
Plaintiff shall pay a reasonable attorney fee of twenty-five percent of the disability benefits awarded. Defendants shall deduct the attorney fee from the disability benefits awarded and pay the same to plaintiff's counsel of record in one lump sum. The attorney fee awarded shall be specifically subject to further orders.
Defendants shall pay the costs.
This the 9th day of September 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER